# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| HAILSOLVE, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | **Case No. 3:24-cv-00299** |
| | ) | **Judge Aleta A. Trauger** |
| WILLIAM E. EARLY, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## MEMORANDUM

Plaintiff HailSolve, Inc. ("HailSolve") initiated this lawsuit by filing a Complaint against defendant William Early in the Chancery Court for Davidson County, Tennessee, asserting claims for breach of two different contracts and seeking declaratory and injunctive relief, attorney's fees pursuant to one of the two contracts, and "monetary damages in an amount to be proven at trial." (Doc. No. 1-2, Complaint ¶ 49; *see also id.* at 12 ("Prayer for Relief").) Defendant William Early removed the case to this court on the basis of diversity jurisdiction, asserting that he is a citizen of Kansas; that HailSolve is a Tennessee corporation whose principal place of business is in Nashville, Tennessee; and that the amount in controversy—based on the plaintiff's claims of "significant but unquantifiable lost business opportunities," plus monetary damages and attorney's fees—exceeds $75,000. (Doc. No. 1, at 1–2.)

Now before the court is the plaintiff's Motion to Remand Case to State Court for Lack of Subject Matter Jurisdiction (Doc. No. 11), filed along with a supporting Memorandum of Law (Doc. No. 12), in which the plaintiff argues that remand is required because the defendant cannot show that the amount in controversy meets that required for the court to exercise diversity jurisdiction. The plaintiff argues that the Complaint does not specifically quantify the damages at

issue but that "the primary relief [it] seeks is a non-monetary injunction" and that the monetary damages at issue, based on commissions that have not yet been determined, are "inherently speculative." (Doc. No. 12, at 4.)

The defendant's Opposition to the Motion for Remand (Doc. No. 13) argues that the aggregate value of the plaintiff's pecuniary interest in this lawsuit greatly exceeds $75,000. The defendant's response is supported by his Declaration. (Doc. No. 13-1.) The defendant requests the opportunity to engage in jurisdictional discovery if the court finds that the record does not adequately establish the amount in controversy.

## I. STANDARD OF REVIEW

The Supreme Court has "often explained that '[f]ederal courts are courts of limited jurisdiction." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Two general bases for jurisdiction exist: federal question jurisdiction, 28 U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332. Diversity jurisdiction exists where all plaintiffs are citizens of different states than all defendants, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

A defendant in state court may remove a case to the federal district court "embracing the place where the action is pending" if the lawsuit meets the diversity requirements. 28 U.S.C. § 1441(a). A plaintiff objecting to removal may move for remand, disputing the defendant's allegation in the removal papers regarding the jurisdictional amount. A district court presented with such a motion "should evaluate whether that action could have been brought originally in federal court." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019) (citations omitted). As a general rule, the sum alleged in the complaint controls, but where the plaintiff seeks "'to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement,' the defendant satisfies its burden when it proves that the

amount in controversy 'more likely than not' exceeds $75,000." *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993), *abrogated on other grounds in Hertz Corp. v. Friend*, 559 U.S. 77 (2010)); ); *see also Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 470 (6th Cir. 2019). This standard "does not place upon the defendant the daunting burden of proving, *to a legal certainty*, that the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages." *Id.* (quoting *Gafford*, 997 F.2d at 159) (emphasis added in *Heyman*).

When a plaintiff is seeking injunctive or declaratory relief, "the amount in controversy is measured by the value of the object of the litigation." *Stryker Emp. Co. v. Abbas*, 60 F.4th 372, 381 (6th Cir. 2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). The court must determine the amount in controversy "from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007) (internal quotation marks and citation omitted). The economic value of injunctive relief is "an objective valuation of the plaintiff's future losses if he does not prevail." *Hamm v. Thunderbird Global Dev., LLC*, No. 2:22-cv-2068, 2022 WL 17663025, at *4 (S.D. Ohio Dec. 14, 2022). Thus, the Sixth Circuit has recognized that "the costs of complying with an injunction . . . may establish the amount-in-controversy." S*tryker Emp. Co.*, 60 F.4th at 381 (quoting *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010)).

When a plaintiff seeks multiple forms of relief, the amount is controversy is based on the aggregate value of each component of the damages sought, which may include not only the value of injunctive relief, but also compensatory damages, punitive damages (if sought and available),

and attorney's fees (if recoverable under statute or a contract). *See Heyman*, 781 F. App'x at 471 (considering whether the defendant had carried its burden of showing that the "aggregate of [the] various components of the [plaintiff's] prayer for relief equaled more than $75,000"); *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007) (attorney's fees provided for by contact are included in determining the amount in controversy for purposes of diversity jurisdiction).

## II.    BACKGROUND

HailSolve alleges that it is engaged in the business of "assisting commercial property owners in mitigating and remediating hail damages, particularly roof damage," and that, although it is headquartered in Nashville, it serves a "nationwide portfolio of customers." (Compl. ¶ 5.) It hired defendant Early as a Senior Vice President of Sales in its Kansas City market in April 2019. (*Id.* ¶ 9.) Early was tasked with "identifying and pursuing leads for potential customers for HailSolve." (*Id.* ¶ 10.) In this role, he allegedly had access to HailSolve's proprietary client service process and had access to HailSolve's entire customer database. (*Id.* ¶ 12.)

To protect its confidential and proprietary information, HailSolve had Early sign a Confidentiality and Non-Compete Agreement ("Confidentiality Agreement") at the inception of his employment. (*Id.* ¶ 13; *see* Confidentiality Agreement, Doc. No. 1-2, at 16–17.) The Confidentiality Agreement contains restrictive covenants that, among other things, purport to bar Early from working for or being associated with any roofing business "whose products or activities compete in whole or in part with any business owned and/or operated by HailSolve," for a period of two years after his employment with HailSolve ends, and from inducing HailSolve employees or customers to cease working for or doing business with HailSolve. (Confidentiality Agreement, Doc. No. 1-2, at 16–17.)

HailSolve terminated Early's employment effective August 8, 2023. (Compl. ¶ 20.) On September 1, 2023, the parties executed a Separation and Release of Claims Agreement

("Separation Agreement") (Doc. No. 1-2, at 19–30), pursuant to which HailSolve agreed to make certain payments to Early, including "a commission on revenue received on invoices issued prior to December 31, 2024 and for which payment [is] received before March 1, 2025 with respect to eight (8) separate projects," and payment of Early's base salary for the sixteen weeks following execution of the Separation Agreement. (*Id.* ¶ 21(a)–(b); *see also* Separation Agreement ¶¶ 3–4.) In exchange, Early (1) agreed to release HailSolve from any and all potential claims, specifically including claims under the ADEA (Separation Agreement ¶ 5);[1] (2) acknowledged the continuing validity and enforceability of the Confidentiality Agreement; and (3) reaffirmed the restrictive covenants in the Confidentiality Agreement, except as specifically modified by the Separation Agreement (*id.* ¶ 9(c)).

The Separation Agreement further provides that, if Early failed to comply with any of the terms thereof, HailSolve's obligation to make any further payments or to provide further benefits would terminate. (*Id.* ¶ 12.) And Early expressly agreed that, if he breached the Separation Agreement, "money damages would not afford an adequate remedy and that Company shall be entitled to seek a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction." (*Id.*) Finally, the Separation Agreement entitles the prevailing party in any action to enforce the Agreement to recover attorney's fees and costs. (*Id.* ¶ 22.)

According to HailSolve, sometime after executing the Separation Agreement, Early went to work for Farha Roofing ("Farha"), a commercial roofing company based in Kansas but serving customers nationwide. (Compl. ¶ 24.) HailSolve alleges that Farha's "business model and

---

[1] The Separation Agreement further states that Early's termination was part of a "group reduction" as defined by the ADEA. (Separation Agreement ¶ 6(e).)

operation with respect to hail damage remediation" is "substantially similar" to HailSolve's, particularly insofar as both provide clients the information they need to have insurance claims approved. (*Id* ¶ 26.) HailSolve alleges that Farha competes directly with it and that Early has breached the Confidentiality Agreement and the Separation Agreement (the "Agreements") by going to work for Farha. In addition, HailSolve alleges that Early has attempted to solicit actual customers and "existing customer leads" away from HailSolve, also in violation of the Agreements. (Compl. ¶ 35.)

HailSolve specifically alleges that it is suffering "ongoing and irreparable harm resulting from [Early's] continued solicitation of actual and potential customers of HailSolve and his direct competition with HailSolve." (*Id.* ¶ 36.) In addition, as a result of Early's actions, it is allegedly "losing and/or at risk of losing its existing business relationships with customers" and has suffered "significant lost business opportunities," and the damages arising from the loss of "existing and prospective customers cannot be easily quantified or redressed through monetary damages alone." (*Id.* ¶¶ 37–39.)

Based on these allegations, HailSolve asserts claims against Early for breach of both Agreements, for which it seeks "injunctive relief to stop [Early's] continued and ongoing violations" of the Agreements and "monetary damages in an amount to be proven at trial." (*Id.* ¶¶ 44, 49.) It sets forth separate "counts" for "Temporary and Permanent Injunctive Relief," seeking to enjoin Early from continuing to breach the Agreements (*id.* ¶ 56), and it requests a declaratory judgment excusing it from further performance under the Separation Agreement—specifically from making further commission or salary payments (*id.* ¶ 62). Its Prayer for Relief further requests

attorney's fees under the Separation Agreement.[2]

As set forth above, the Notice of Removal does not attempt to precisely quantify damages, but Early asserts that the value of the plaintiff's claims—including injunctive relief, damages, and attorney's fees—exceeds $75,000. The plaintiff's Motion to Remand argues that removal was improper, because it primarily seeks injunctive relief and because the value of the monetary damages it requests is speculative.

In support of his Opposition, Early filed his own Declaration, in which, aside from denying that he breached the Agreements, he attests that: (1) during his last eight months with HailSolve (from January 2023 through August 2023), he earned almost $300,000 in commission payments, based on a commission rate of 2.5%, meaning that he generated approximately $11,000,000 in gross revenue for HailSolve; (2) to date, HailSolve has paid him $115,274 under the Separation Agreement; and (3) he "conservatively" estimates the total funds that "will ultimately be owed to [him] under the Separation Agreement to be $247,733.53." (Doc. No. 13-1, Early Decl. ¶¶ 10. 15.) In addition, based on his own knowledge of the industry, Early asserts that the value of the competitive activity that HailSolve seeks to enjoin, standing alone, is clearly well in excess of $75,000. He also argues that one or the other of the parties will likely be entitled to attorney's fees under the Separation Agreement, the value of which, standing alone, will likely exceed $75,000.

---

[2] Under Tennessee law, HailSolve had no obligation to plead a specific amount in controversy, and, even if it had pleaded a specific amount, it would be permitted to recover damages in excess of the amount demanded. *See* Tenn. R. Civ. P. 54.03 ("Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings . . . .").

## III.    DISCUSSION

As part of its request for declaratory relief, HailSolve seeks to be absolved from further financial obligations to the plaintiff. (*See* Compl. ¶¶ 62–63; *see also* Separation Agreement ¶ 12 ("If the Employee fails to comply with any of the terms of this Agreement or post-employment obligations contained in it, the Company may, in addition to any other available remedies, terminate any benefits or payments that are later due under this Agreement, without waiving the releases provided in it.").)

As set forth above, Early states in his Declaration that, as of April 29, 2024, he had been paid $115,274.39 under the Separation Agreement, and he "conservatively" estimates that he is still owed an additional $132,459. (Early Decl. ¶ 15.)[3] Thus, if the plaintiff's request for a declaration that it owes nothing further to the plaintiff is denied, it stands to lose at least this amount. Standing alone, the value of the request for declaratory relief is in excess of $75,000 and, therefore, meets the amount in controversy. *Accord Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) ("[W]here a party seeks a declaratory judgment, the amount in controversy is . . . the value of the consequences which may result from the litigation." (citation and internal quotation marks omitted)).

HailSolve also seeks actual damages for breach of contract. Although it does not attempt to quantify those damages, it seems clear that it has suffered damages worth, at a minimum, the amounts it has already paid Early under the Separation Agreement that Early allegedly breached. This sum, too, exceeds $75,000 and would satisfy the jurisdictional amount by itself.

---

[3] Early actually states, "I conservatively estimate that the total funds that will be ultimately owed to me under the Separation Agreement to be $247,733.53." (Early Decl. ¶ 15.) It is not clear whether Early is saying that the company will owe him an *additional* $274,733 or a *total* of $274,733. Either way, the amount he believes the company owes him exceeds $75,000.

Given these findings, the court has no need even to consider the value of the attorney's fees and prospective injunctive relief HailSolve seeks. The court nonetheless notes that the defendant's Declaration establishes that he generated around $11,000,000 in gross revenue for the plaintiff just in the first eight months of 2023 and earned nearly $300,000 in commissions. Considering those figures in light of HailSolve's allegations that Early's breach of his obligations have caused it to suffer "significant lost business opportunities" and that it will "continue to suffer harm" if an injunction is not entered (Compl. ¶¶ 38, 40), it would not be speculative to presume that the value of the injunctive relief it seeks is equivalent to well over $75,000. *Accord Basicomputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir. 1992) (finding $50,000 amount in controversy met where each of five defendants had "generated sales worth well over $100,000 per year" while working for the defendant, and the defendant alleged that it "suffered severe competitive losses from the mass departure of the defendants . . . and from the defendants' alleged attempts to lure [away] Basic's clients").[4]

Early has clearly satisfied his burden of proving that the amount in controversy "more likely than not" exceeds $75,000. *Heyman*, 781 F. App'x at 470.

---

[4] In *Basicomputer*, the plaintiff filed suit in federal court and pleaded damages in excess of the jurisdictional amount, and the Sixth Circuit was in the position of considering the defendants' subject-matter jurisdiction challenge. The court noted that, in that context, jurisdiction exists "unless it appears 'to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Basicomputer*, 973 F.2d at 510 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). This standard is substantially different from that applied by a court considering a motion to remand when the plaintiff does not actually specify the amount in controversy, but *Basicomputer* nonetheless serves to establish that the value of an employee's services to a company bears some correlation to the value of the company's claims for injunctive relief to enforce restrictive covenants in a non-competition agreement. Indeed, applied here, the rationale in *Basicomputer* suggests that the value of the plaintiff's claims for injunctive relief could exceed $1,000,000.

## IV.    CONCLUSION

For the reasons set forth herein, the Motion to Remand (Doc. No. 11) will be denied. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge